UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
MARILYN ALVERANGA,

                            Plaintiff,

- against -

MORRIS G. WINSTON, et al.,

                            Defendants.
---------------------------------------------------------X

**REPORT AND RECOMMENDATION**

04 CV 4356 (ARR)

On November 22, 2005, this Court issued a Report and Recommendation finding that defendant Winston G. Morris[1] had not provided written consent to removal of this action from state to federal court within the time period set by 28 U.S.C. § 1446(b). The district court subsequently affirmed the Order contained therein, which instructed that the case be remanded to state court and that plaintiff's counsel be awarded reasonable attorneys' fees and costs incurred as a result of the defective removal. The determination of those fees and costs[2] was then referred to the undersigned.

## DISCUSSION

Plaintiff's counsel has presented an application for attorneys' fees totalling $25,723.00,

---

[1] As noted in the Opinion and Order issued by Judge Ross on December 9, 2005, defendant Winston G. Morris is incorrectly named "Morris G. Winston" in the caption of this case. The Court will use the defendant's real name for purposes of this Report and Recommendation.

[2] Plaintiff's fee submission does not contain a request for costs.

1

an amount representing 29.7 hours of services performed by plaintiff's counsel, Sandra Ruth Schiff, Esq., and 66.8 hours performed by Jonathan Horn, Esq., who represented plaintiff as "of counsel" to Ms. Schiff.

A. Objectively Reasonable Basis for Removal

Defendants raise several objections to plaintiff's fee request. First, defendants urge the Court to reconsider its recommendation that fees be awarded in light of the standard set out in the Supreme Court's decision in Martin v. Franklin Capital, Corp., 126 S. Ct. 704 (2005), decided after the Court's issuance of its November 22, 2005 Report and Recommendation. (See Defs.' Mem. at 1-4).[3] In Martin, the Court considered the fee-shifting provision set forth in 28 U.S.C. § 1447(c), and rejected arguments that Section 1447(c) requires the court to grant attorneys' fees on remand "as a matter of course." See id. at 708. Instead, the Court concluded that "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." Id. The Court rejected the notion that Section 1447(c) is a fee-shifting statute designed either to "tilt the exercise of discretion in *favor* of fee awards" or to exhibit a "strong bias *against* fee awards." Id. at 710 (emphasis in original). Rather, the court opined that:

> Congress . . . would not have enacted § 1447(c) if its only concern were avoiding deterrence of proper removals. Instead, Congress thought fee shifting appropriate in some cases. The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and

---

[3]Citations to "Defs.' Mem." refer to the Memorandum of Law of Defendants (opposing Plaintiff's Application for Costs under Section 1447(c)), dated January 10, 2006.

2

fees on remand reduces the attractiveness of removal as a method
for delaying litigation and imposing costs on the plaintiff.

Id. at 711.

Defendants argue that because this Court has not yet entered an award of costs and fees, it must re-examine the prior Order awarding fees in this case in light of the Martin decision. (See Defs.' Mem. at 2 (citing McGinty v. New York, 251 F.3d 84, 91 (2d Cir. 2001); Crane Co. v. American Standard, Inc., 603 F.2d 244, 248 (2d Cir. 1979)). Defendants contend that if the case were analyzed under the standard set forth in Martin, plaintiff's fee request would have to be rejected because defendants had an objectively reasonable basis for seeking removal. (See id. at 3-4).[4] Defendants argue that the "attorney signing the notice of removal had an objectively reasonable basis for removing the case when he did." (Id.) In support of this argument, counsel submits an unsworn, unsigned, internal office memorandum (the "Marino Memorandum") written by one attorney at the firm, Matthew Marino, Esq., and addressed to Robert A. Fitch, Esq., one of the named partners in the firm of Newman Fitch Altheim Myers, P.C. ("Newman Fitch"). The Marino Memorandum, dated September 22, 2004, references this case and states: "I spoke with our driver, Winston Morris. He received the Summons and Complaint on September 16, 2004."[5] (Defs.' Mem., Ex. A). Based on this Memorandum, defendants contend that at the time the Notice of Removal was filed on October 7, 2004, defendants' attorney

---

[4] Given the Court's assessment of defendants' substantive contentions concerning the Martin decision, the Court finds it unnecessary to discuss plaintiff's argument that the decision to award fees should not be revisited at this time. (See Plaintiff's Memorandum of Law in Support of Application for Legal Fees, dated January 23, 2006 at 1, 3).

[5] In the memorandum, Marino further notes that "[w]e have until 10/7 to file removal." (Defs.' Mem., Ex. A).

3

"represented [Winston] Morris," and that his associate had spoken with Morris over the telephone prior to the removal. (Id. at 3-4). Thus, according to defendants, the attorney's consent to removal on behalf of his clients was objectively reasonable. (See id.)

The Marino Memorandum, which was not submitted to the Court in connection with defendants' original papers addressing the motion to remand,[6] contradicts certain representations made by defendants' counsel in other documents that were considered by the Court in deciding to recommend that the case be remanded to state court. Specifically, in Defendants' Memorandum of Law in Opposition to [the] Application to Remand, dated December 9, 2004 ("Defs.' Remand Mem."), defendants represented that, prior to serving the Notice of Removal, counsel realized that there was a potential conflict of interest that would make it difficult for Newman Fitch to represent both Mr. Morris and Hertz Canada Limited ("Hertz Canada"), the lessor that initially retained the Newman Fitch firm. (See Defs.' Remand Mem. at 2). Indeed, the Answer, which was filed initially only on behalf of Hertz Canada, contained cross-claims against Mr. Morris. (See id. at 3-4; Schiff Decl. ¶ 13).[7] Under these circumstances, it was not reasonable for counsel to believe that they could represent both clients, when one had filed claims against the other.

Moreover, contrary to the representations made in connection with the Marino Memorandum, the papers submitted to the Court opposing the remand motion contain contradictory statements regarding whether Mr. Morris had been contacted by defendants' counsel prior to removal. On the one hand, defendants' counsel notes that Newman Fitch

---

[6]The Marino Memorandum was, however, submitted in connection with defendants' objections to the Court's November 22, 2005 Report and Recommendation.

[7]Citations to "Schiff Decl." refer to the Declaration of Sandra R. Schiff, Esq., submitted in support of plaintiff's motion to remand, dated October 29, 2004.

4

recognized the existence of a potential conflict of interest prior to filing the Notice of Removal, and that it was only after the Notice was filed that counsel successfully contacted Mr. Morris and subsequently "appeared for both defendants." (Defs.' Remand Mem. at 2-3). On the other hand, counsel claim that "this office had the authority and consent of both defendants at the time the notice of removal was filed." (Id. at 5). Indeed, this Court noted in its November 22, 2005 Report and Recommendation that counsel's own papers contained contradictory assertions concerning whether counsel had the consent of both defendants for removal. (See Report at 13). Perhaps most critical to the Court's analysis here, however, is that Mr. Marino, the author of the Marino Memorandum, had submitted an earlier letter to the Court in which he admitted that he had been unable to speak with Mr. Morris until after the Notice of Removal was filed. (Marino Letter dated Nov. 9, 2004 at 2).

Thus, contrary to defendants' arguments, this Court finds that it was **not** objectively reasonable for counsel to have filed the Notice of Removal when they did. While Newman Fitch clearly represented Hertz Canada at the time that the Notice of Removal was filed, there is no way that an attorney could reasonably have believed that the firm similarly represented Mr. Morris at that time, when counsel had already filed a cross-claim against Morris on behalf of their other client, Hertz Canada, thus creating a clear and unequivocal conflict of interest. Moreover, while there now seems to be some dispute as to when counsel contacted Morris, nothing in the recent submission indicates that counsel discussed removal with Morris or obtained Morris' consent to removal before the Notice of Removal was filed.[8]

---

[8] Indeed, as noted by defendants themselves in their objections to the November 22, 2005 Report and Recommendation, "the [Marino] memorandum does not say whether Mr. Morris consented to removal." (Defs.' Objections at 12).

Mindful of the Martin court's focus on the purpose of a fee award under Section 1447(c), this Court concludes that it is appropriate in this instance to shift the costs associated with removal and remand to defendants who, through their inconsistent representations, filing of cross-claims and subsequent withdrawal of cross-claims, and ultimate failure to comply with the requirements of the removal statute, have created unnecessary litigation expense and caused delay in the progress of plaintiff's claims. Accordingly, having considered the recent holding in Martin, this Court continues to respectfully recommend that the court, in its discretion, award reasonable fees and costs to plaintiff under Section 1447(c).

B. Calculation of Fees

Defendants also challenge the amount of fees requested by plaintiff, complaining that both the rate charged by Ms. Schiff and the hours spent on the matter were excessive. (See Defs.' Mem. at 4-8).

It is well established that "'[t]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.'" Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (quoting Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)). In determining whether a fee is appropriate, the court considers a number of factors, including the "'difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability and reputation; the customary fee charged by the Bar for similar services; and the amount involved.'" F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1263 (2d Cir. 1987) (quoting In re Schaich, 55 A.D.2d 914, 391 N.Y.S.2d 135, 136 (2d Dep't), appeal denied, 42 N.Y.2d 802,

397 N.Y.S.2d 1026, 366 N.E.2d 293 (1977)). The ultimate determination is whether, considering all of the circumstances, the fee requested is "reasonable." See Hensley v. Eckerhart, 461 U.S. at 433-37.

In support of their fee request, plaintiff's counsel have each submitted a chronological listing of the dates on which services were rendered, the amount of time spent, and the nature of the work performed, in accordance with the Second Circuit's holding in New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). See also Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir. 1986). The Court notes, however, that the documentation of services rendered does not appear to be in the form of contemporaneous time records as required by Carey. 711 F.2d at 1148. Instead, the documentation appears to have been compiled at a later date from other records. (See Schiff Letter dated Dec. 22, 2005; Horn Letter dated Dec. 6, 2005). Although courts in this Circuit have permitted fee awards to be based on summaries of contemporaneous records, the courts have generally required that the summaries be accompanied by a sworn affidavit attesting to the fact that the summaries are accurate and are based on contemporaneous records. See Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d at 1160-61. Here, the records in support of the fee application were submitted under the cover of unsworn letters, with no indication as to whether the time entries represented summaries of contemporaneously-maintained records.

Accordingly, in accordance with Carey's requirements, the Court respectfully recommends that any fees awarded in this case be contingent upon the submission of Affidavits in support of counsels' fee application that make clear that the listings submitted to the Court are

accurate summaries of counsels' contemporaneous records.[9] See, e.g., Walia v. Vivek Purmasir & Assocs., Inc., 160 F. Supp. 2d 380, 382 (E.D.N.Y. 2000) (adopting portion of Report and Recommendation that required submission of attorney affidavit under comparable circumstances); Gavenda v. Orleans County, No. 95 CV 251, 1999 U.S. Dist. LEXIS 22703, at *1 (W.D.N.Y. July 27, 1999).

Ms. Schiff, counsel to plaintiff, is a sole practitioner who has been licensed to practice law in the State of New York since 1980.[10] (Schiff Letter dated Dec. 22, 2005 at 1). She indicates that she spent 29.7 hours researching the removal statute, preparing and reviewing letters to and from counsel for defendants, preparing her declaration, the motion, and exhibits, reviewing the amended pleading and conferring with Jonathan S. Horn, reviewing defendants' submission in connection with the motion to remand and preparing reply memoranda and other documents. (Id. at 3-4). According to Ms. Schiff, she normally charges $450.00 per hour for time logged providing legal services.

Mr. Horn, who is also a sole practitioner and who has been licensed to practice law in the State of New York for over five years, has reduced his billable rate to $185.00 per hour from the $250.00 per hour that he normally bills. (Horn Letter dated Dec. 6, 2005 at 1). He indicates that he billed a total of 66.8 hours in connection with the motion to remand. (Id. at 3).

---

[9]Affidavits attesting to the transcription of contemporaneous records are required because the rule in this Circuit prohibits reconstructed records where the attorneys have not kept contemporaneous records. See Lenihan v. City of New York, 640 F. Supp. 822, 824 (S.D.N.Y. 1986).

[10]Ms. Schiff has been licensed to practice law in the Eastern District of New York for the same time period. (Id.)

8

1) <u>Defendants' Arguments</u>

Defendants argue that the total amount of fees requested - $25,723.00 - is excessive when considered in light of other awards issued under Section 1447(c). (See Defs.' Mem. at 4-5 (citing cases with awards ranging from $200.00 to $31,629.33 in a case where the costs included time logged in connection with motions to dismiss and transfer venue). First, defendants contend that the $450.00 per hour rate charged by Ms. Schiff is excessive. (Id. at 6). Defendants also complain that there are mistakes in plaintiff's application that require a reduction in fees, including the fact that Ms. Schiff's documented time adds up to 26.2 hours, while she requested compensation for 29.7 hours in the fee application, and that Mr. Horn's hours total only 61.6 hours instead of the 66.8 hours for which he requested compensation.[11] (Id. at 7). In addition, defendants argue that certain time entries must be excluded, such as time spent reviewing pleadings, because the entries detail time that would have been spent even if the case had not been removed. (Id. at 7-8). Thus, under Section 1447(c), defendants argue that these are items that are not compensable. (See id. (citing <u>Avitts v. Amoco Prod. Co.</u>, 111 F.3d 30, 32 (5th Cir.), <u>cert. denied</u>, 522 U.S. 977 (1997)).

Finally, defendants assert that, when assessed on a per page basis, plaintiff's fees come to nearly $1,000.00 per page for 27 pages of submissions. (Defs.' Mem. at 4). Defendants contend that reasonable costs and fees in the context of a fee award on remand are generally not more than a few thousand dollars because the party seeking removal has the burden of showing that removal was proper. (Id. at 4-5). Plaintiff, as the party opposing removal in this instance,

---

[11] The Court's calculations verify that the accurate total of Ms. Schiff's documented hours is 26.2 hours and that Mr. Horn's hours total 61.6 hours.

"questioned on two grounds the procedure used to remove the action from state court;" "there wasn't much for the plaintiff to do other than to prepare and serve a simple motion, the costs for which should have been nowhere near the $25,723 now sought." (Id. at 6). In this manner, defendants contend that the number of hours logged on the matter was excessive. (Id. at 7 (citing Adolph Coors Co. v. Truck Ins. Exch., 383 F. Supp. 2d 93, 96-97 (D.D.C. 2005) (allowing 31.85 hours for litigation surrounding the removal and motion for remand); Braco v. MCI Worldcom Commc'ns, Inc., 138 F. Supp. 2d 1260, 1272 (C.D. Cal. 2001) (reducing hours for motion to remand and opposition to motion to dismiss to 37.5 hours); Mehney-Egan v. Mendoza, 130 F. Supp. 2d 884, 886 (E.D. Mich. 2001) (allowing 10 hours for remand motion)).

2) Analysis

Having reviewed plaintiff's submissions, the Court agrees that the fee sought here is excessive. Not only does it appear that Mr. Horn spent an unreasonable number of hours performing research, logging at least 38.05 hours,[12] but other entries in plaintiff's fee application combine tasks in a way that makes it difficult for the Court to assess whether the time logged was reasonable.[13] When considered in light of the work product submitted to the Court and the nature

---

[12]This figure excludes certain entries that involve research in conjunction with the review of pleadings or the draft reply and which do not isolate the amount of time spent performing the research.

[13]See, e.g., 3.50 hours spent by Mr. Horn reviewing the amended pleadings, researching, and holding a conference with Ms. Schiff; 2.75 hours logged reviewing the draft reply and researching case law. "[I]t is the responsibility of the applicant to make separate time entries for each activity." Wilder v. Bernstein, 975 F. Supp. 276, 286 (S.D.N.Y. 1997) (internal citation omitted). Numerous courts in this Circuit have noted that a fee applicant's failure to do so justifies a reduction in the fee award, as it renders it difficult for the court to assess the reasonableness of the time spent on each activity and the appropriate rate to apply. See, e.g.,

of the issues addressed, the Court finds that the time spent was not reasonable.

The law is clear that when reviewing a fee application, the court "should exclude excessive, redundant or otherwise unnecessary hours." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999) (citing Hensley v. Eckerhart, 461 U.S. at 434). In evaluating time sheets and expense records, some courts have dealt with the problem posed by excessive or redundant billing by simply subtracting the redundant hours from the amount of hours used to calculate the lodestar. See, e.g., Fernandez v. North Shore Orthopedic Surgery & Sports Med., P.C., No. 96 CV 4489, 2000 WL 130637, at *6 (E.D.N.Y. Feb. 4, 2000); see also Ruggiero v. Krzeminski, 928 F.2d 558, 564 (2d Cir. 1991) (affirming the lower court's decision to subtract 32 hours for irrelevant research and for work performed on post-trial motions before calculating the lodestar). However, the Second Circuit has stated that the district court is not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994); see also Daiwa Special Asset Corp. v. Desnick, No. 00 CV 3856, 2002 WL 31767817, at *5 (S.D.N.Y. Dec. 3, 2002) (reducing fee request of $2.2 million by 50% due in part to excessive billing). Particularly where the billing records are voluminous, "it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent." Amato v. City of Saratoga Springs, 991 F. Supp. 62, 66 (N.D.N.Y. 1998) (citing Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992)). The court in Daiwa Special Asset Corp. v. Desnick also recognized that what may be "'reasonable'"

---

Williams v. New York City Hous. Auth., 975 F. Supp. 317, 327-28 (S.D.N.Y. 1997); Wilder v. Bernstein, 975 F. Supp. at 286.

attorneys' fees and expenses in the context of an order requiring a losing party in a litigation to pay the prevailing party "is not the same as the reasonableness of a bill that a law firm might present to its own paying client." 2002 WL 31767817, at *2 (citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986)). Thus, "[i]n calculating the number of 'reasonable hours,' the court looks to 'its own familiarity with the case . . . and its experience generally as well as to the evidentiary submissions and arguments of the parties.'" Clarke v. Frank, 960 F.2d at 1153 (internal citations omitted).

Accordingly, some courts have used percentage reductions "as a practical means of trimming fat from a fee application." New York State Ass'n Retarded Children, Inc. v. Carey, 711 F.2d at 1146 (finding percentage reductions to be an acceptable means for reducing fee applications); see also Tokyo Electron Ariz., Inc. v. Discreet Indus. Corp., 215 F.R.D. 60, 64–65 (E.D.N.Y. 2003) (applying 10% reduction to excessive fee application); Rotella v. Board of Educ. of the City of New York, No. 01 CV 434, 2002 WL 59106, at *3-4 (E.D.N.Y. Jan. 17, 2002) (applying percentage reduction to fees of several attorneys for excessive and redundant billing); Quinn v. Nassau County Police Dep't, 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and another attorney's fees by 30%, for unnecessary and redundant time); Perdue v. City Univ. of New York, 13 F. Supp. 2d 326, 346 (E.D.N.Y. 1998) (imposing a 20% reduction for redundancy); American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding that "the use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work," and deducting 40% of plaintiffs' hours).

Bearing in mind the cases cited in defendants' submissions, and the Court's familiarity with the work performed in the case and in comparable cases, the Court respectfully recommends

that an across-the-board reduction of 40% be applied to plaintiff's counsel's hours. This results in a total of 52.68 compensable hours in connection with the motion to remand.[14] Although still somewhat higher than the hours approved in some of the cases cited by defendants, the Court concludes that this is a fair amount given the fact that the issues presented here were not simple and straightforward. In so concluding, the Court also notes that the case was further complicated by defendants' own inconsistent representations, the resolution of which required detailed examination in a lengthy Report and Recommendation from this Court.

The Court also agrees with defendants that Ms. Schiff's requested fee rate of $450.00 per hour is higher than the average rate found to be reasonable for a case of this type and a practitioner of her experience in the Eastern District of New York.[15] See Greenidge v. Mundo Shipping Corp., 60 F. Supp. 2d 10, 12-13 (E.D.N.Y. 1999) (noting, in a remand case, that recent rates awarded by courts in the Eastern District range from $200.00 to $225.00 for partners, $200.00 for senior associates, and $100.00 for junior associates).

In the context of fee-shifting statutes, the Second Circuit has held that the rates used to calculate the "lodestar" should be in line with those rates prevailing in "'the district in which the court sits.'" Luciano v. Olsten Corp., 109 F.3d at 115 (quoting Polk v. New York State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983)); see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 369 F.3d 91, 95-96 (2d Cir. 2004); Cruz v. Local

---

[14]This calculation employs the correct sum of hours, not the erroneous totals included in plaintiff's submissions. See discussion supra at 8-9.

[15]Although defendants cite rates approved by courts throughout the country (see Defs.' Mem. at 6), the relevant rates are those prevailing in the community in which the court sits. See Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997)

13

Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d at 1159 (noting that the rates charged must be "'in line with those [rates] prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation'" (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)).

The Second Circuit has indicated that courts may consider evidence of prevailing rates for similar services beyond the fee application itself. See Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989), cert. denied, 496 U.S. 905 (1990). In addition to the parties' evidentiary submissions, the Court may also consider its own experience and familiarity with the case and with rates generally charged. See Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d at 1160 (noting that a "district court's 'choice of rates [is] well within [its] discretion'") (quoting Cabrera v. Jakabovitz, 24 F.3d 373, 393 (2d Cir. 1994).

> To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.

Blum v. Stenson, 465 U.S. at 895 n.11.

Here, plaintiff's counsel has not provided the Court with any information to suggest that her rate is in line with those prevailing in this district, and has not furnished any supporting affidavits from other counsel indicating that $450.00 per hour is reasonable given the nature of her practice, which appears to be general litigation. Furthermore, Ms. Schiff has not cited any other special considerations that would justify this rate. Instead, the Court, based on its extensive experience with fee applications, finds that $450.00 per hour is more consistent with the rate

being paid to senior attorneys in larger firms for work performed in connection with more complex litigation. See, e.g., Weil v. Long Island Sav. Bank, 188 F. Supp. 2d 265, 269 (E.D.N.Y. 2002) (finding counsel's "customary rates" of $371.00 to $450.00 per hour for a senior partner to be justified in a consumer class action); Yurman Designs, Inc. v. PAJ, Inc., 125 F. Supp. 2d 54, 58 (S.D.N.Y. 2000)[16] (finding counsel's hourly rates of $520.69 for partners and $278.50 for associates in an intellectual property action to be "'commensurate with the rates prevailing in the community'" for that type of case) (quoting Aris Isotoner, Inc. v. Dong Jin Trading Co., 17 U.S.P.Q.2d 1017, 1024 (S.D.N.Y. 1989)), aff'd, 29 Fed. Appx. 46 (2d Cir. 2002); Rodriguez v. McLoughlin, 84 F. Supp. 2d 417, 423 (S.D.N.Y. 1999) (applying, in a civil rights action, a rate of $425.00 per hour for the partner on the case, and $240.00 per hour for a young associate who billed many of the hours logged in the matter).

Rates awarded to sole practitioners or in cases not involving complex issues tend, on average, to be lower.[17] See, e.g., Schwartz v. Chan, 142 F. Supp. 2d 325, 332 (E.D.N.Y. 2001)

---

[16] Although the relevant market for evaluating the reasonableness of an attorney's fee has been described as the Eastern District of New York, this Court has previously questioned the wisdom and fairness of utilizing a "prevailing rate" that differs on average by more than $100.00 per hour depending on which side of the Brooklyn Bridge the court sits. See Nicholson v. Williams, No. 00 CV 2229, 2004 WL 4780498, at *10 (E.D.N.Y. Apr. 5, 2004) (citing New York State Nat'l Org. for Women v. Pataki, No. 93 CV 7146, 2003 WL 2006608, at *2 (S.D.N.Y. Apr. 30, 2003) (stating that "after reviewing recent fee awards [for complex civil rights cases] litigated by small firms, the court finds that . . . rates of $430.00 and $400.00 per hour . . . are on the high end but still within a reasonable range" for attorneys in the Southern District, little more than a mile away from the Eastern District). In this manner, the Court finds attorneys' fees cases from the Southern District of New York to be helpful in its analysis of a reasonable rate in this district. See New Leadership Comm. v. Davidson, 23 F. Supp. 2d 305 (E.D.N.Y. 1998).

[17] The Court notes, however, that in McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, the Second Circuit cautioned that "district courts should not treat an attorney's status as a solo practitioner as grounds for an automatic reduction in the reasonable hourly rate" used in

(finding that $175.00 per hour was a reasonable rate in action resulting in default judgment); Cowan v. Ernest Codelia, P.C., No. 98 CV 5548, 2001 WL 30501, at *10 (S.D.N.Y. Jan 12, 2001) (awarding a sole practitioner who had been an "active civil rights litigator for many years" fees at the hourly rate of $250.00); Walia v. Vivek Purmasir & Assocs., Inc., 160 F. Supp. 2d at 382 (increasing from $175.00 per hour to $200.00 per hour the rate for a sole practitioner in gender discrimination litigation resulting in default judgment).

Accordingly, based on the nature of the work performed, the experience of counsel, and this Court's knowledge of prevailing rates in this district, the Court concludes that a reasonable rate for Ms. Schiff is $250.00 per hour. The Court also finds that Mr. Horn's rate of $185.00 per hour, although slightly high, is nonetheless reasonable. Taking into account the recommended adjustments in rates and the across-the-board reduction for excessive hours, the Court respectfully recommends that plaintiff receive a fee award of $10,767.60, representing 15.72 hours at $250.00 per hour for Ms. Schiff and 36.96 hours at $185.00 per hour for Mr. Horn. As detailed above, it is recommended that this award be made contingent upon plaintiff's counsels' submission of Affidavits in further support of the fee application.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b); Small v. Sec'y of Health & Human

---

the lodestar calculation. 450 F.3d 91, 97-98 (2d Cir. 2006) (affirming the district court's fee award while noting that "[o]verhead is not a valid reason for why certain attorneys should be awarded a . . . lower hourly rate" and that the "focus of the inquiry . . . must instead be determined by reference to the 'prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise, and reputation'") (internal citation omitted).

Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
January 9, 2007

Cheryl L. Pollak
United States Magistrate Judge